# **EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ELEANOR SCALLI and ROBERT SCALLI,

Plaintiffs,

v.

CITIZENS FINANCIAL GROUP, INC.,

Defendant.

Civil Action No. 03-12413-DPW

**DEFENDANT'S REPLY MEMORANDUM IN
FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Citizens Financial Group, Inc. ("Defendant") respectfully submits this Reply Memorandum in further support of its Motion for Summary Judgment. To survive summary judgment, Plaintiffs "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In their Opposition. Plaintiffs overwhelmingly fail to meet their burden.

**ARGUMENT**

**I.    Plaintiffs' Public Policy Claim Fails Because the Wage Payment Act Provides the Exclusive Remedy for Their Claim**

Plaintiffs maintain that their public policy claim is based on "repeated assertions of their rights to be paid wages, commissions and benefits, individually," and their "asserted rights to contribute to 401K or retirement plans." Opp. at 12. The Wage Act provides Plaintiffs' exclusive remedy for unpaid wages. *See Mello v. Stop & Shop Cos.*, 402 Mass. 555, 557 n. 2 (1988) (no common law public policy exception is needed when the legislature has prescribed a statutory remedy and citing the Wage Act as an example of such a statutory remedy); *Scott v. Granada Computer Serv.,* 1996 WL 1186807, No. 9503429 (Mass. Super. May 2, 1996) (Houston, J.) (Public policy claim for termination in retaliation for bringing a claim under the

Wage Act fails because the Wage Act already prohibits retaliation against an employee for asserting his rights). The legislature created the Wage Act to remedy claims for unpaid wages. The Court need not recognize a new public policy. Additionally, Plaintiffs cannot dispute the fact that Joyce Hicks and Debra Cornish, the decision makers concerning Plaintiffs' termination from employment, were not even aware of Plaintiffs' purported claim for unpaid compensation. Accordingly, Plaintiffs could not have been terminated because of asserting these alleged legal rights.

Plaintiffs further assert that they raised concerns about the tax consequences of Defendant's payment and social security contributions with their supervisor, Mr. Conn.[1] *See* Opp. at 12-13. Plaintiffs' deposition testimony, however, fails to support their claim that they raised such concerns with Mr. Conn.[2] *See* Opp. at 13 (citing Plaintiffs' Statement of Disputed Facts ("SDMF") at ¶¶ 35-44, 73). Additionally, Plaintiffs' claim that they complained about violations of "Human Resources policies," fails to establish a public policy claim. *See, e.g., Mello,* 402 Mass. at 555 (violation of internal policy does not create public policy claim). Moreover, even if Plaintiffs complained that their payment somehow violated tax or social security laws, the Wage Act provides remedies for those claims.

---

[1] Plaintiffs fail to point to any tax, social security, ERISA or banking laws that were even arguably violated because of their payment structure. To the extent Plaintiffs' assert that they were improperly denied the right to contribute to their 401(k) Plan, such a claim is preempted by ERISA. *See Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133 (1990) (ERISA's explicit language and its structure and purpose demonstrate a congressional intent to preempt a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under an ERISA-covered plan).

[2] Defendant plans to file a motion to strike Plaintiffs' Statement of Disputed Facts ("SDMF"). Plaintiff's SDMF attempts to create disputed facts by denying Plaintiffs' own testimony and mischaracterizing the testimony of others. Accordingly, Plaintiffs have mischaracterized the record before the Court. Additionally, Plaintiffs failed to controvert any of the undisputed facts upon which Defendant's summary judgment motion is based. Therefore, under Local Rule 56.1, all of the facts set forth in Defendant's Statement of Undisputed Material Facts in Support of its Summary Judgment should be deemed admitted.

II. **Plaintiffs' Covenant of Good Faith and Fair Dealing Claim Fails for the Same Reason Their Public Policy Claim Fails**

In the employment context, the sole remedy under the covenant of good faith and fair dealing for at-will employees like Plaintiffs is a *Fortune* claim, alleging termination to avoid payment of compensation that is earned or almost earned.[3] *See* 45 SCOTT C. MORIEARTY ET AL., MASS. PRACTICE § 3.3 at 172 (2003) ("[t]he doctrine of unjust enrichment thus forms the outer boundary of the Fortune doctrine not only in the remedy available but also in the conduct prohibited"), *citing Tenedios v. Wm. Filene's & Sons Co., Inc.,* 20 Mass. App. Ct. 252, 255 (1985) and *McCone v. New England Tel. & Tel.,* 393 Mass. 231, 234 (1982). In their Opposition, Plaintiffs do not claim that Defendant terminated their employment to avoid paying them compensation they had already earned or were "on the brink" of earning.[4] In fact, since they admittedly never complained to anyone other than Mr. Conn about alleged unpaid compensation, Ms. Hicks and Ms. Cornish, who made the decision to terminate Plaintiffs'

---

[3] To the extent Plaintiffs construe their good faith and fair dealing claim as a claim for misrepresentation, such a claim must be dismissed for the same reasons discussed below in addressing Count III (Plaintiffs' misrepresentation claim). *See* Opp. at 14. Additionally, the cases Plaintiffs rely on fail to support their claim. In *Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.,* 139 F.Supp.2d 147 (D. Mass. 2001), the Court, in evaluating a dispute between a franchisor and franchisees (not an employment dispute), found that the franchisees' claim for breach of the covenant of good faith and fair dealing failed because "the implied covenant of good faith cannot override the express terms of a contract." *Id* at 156 (quotations omitted). Similarly, Plaintiffs reliance on *Chokel v. Genzyme Corp.,* 2003 WL 23016549, 17 Mass. L. Rptr. 83 (Mass. Super. Nov. 12, 2003) (Van Gestel, J.), a dispute between a stockholder and a corporation (again, not in the employment context), is equally misplaced. The *Chokel* court concluded that there was no breach of the implied covenant because the court "cannot, and should not, add language to the contract that the parties did not choose ... New or independent rights or duties cannot be added by a judge in the cloak of the implied covenant of good faith and fair dealing." *Id* at *4,

[4] Notably, Defendant received no "financial windfall" as a result of Plaintiffs termination from employment. The loans in Ms. Scalli's pipeline at the time of her termination equaled approximately $40,000 in potential commissions. Ms. Scalli's contract provided that she would only receive commissions for loans funded on the system up to, and including, her last day of employment. SUMF at ¶ 12. Ms. Scalli was paid commissions on all loans that closed up to her date of termination. Thereafter, loans in Ms. Scalli's pipeline were reassigned to other loan officers to see the loan through closing. The commission payments based on the loans in Ms. Scalli's pipeline were paid to other loan officers. Accordingly, the Company did not "save" any money as a result of Ms. Scalli's termination from employment. *See* Defendant's Supplemental Appendix (Hicks Dep. at 186-187).

employment, were not even aware of their purported claim for compensation; and thus could not have considered it in making the termination decision. As Plaintiffs raise no *Fortune* claim, their claim for breach of the covenant of good faith and fair dealing is a recast claim for termination in violation of public policy and must be dismissed for the same reasons described in response to Count I above.[5]

### III. Plaintiffs' Unsupported Assertion That They Were Verbally Promised Compensation In Addition to the Compensation Described in their Fully Integrated Contracts Cannot Survive Defendant's Summary Judgment Motion

Plaintiffs' claim of misrepresentation based on alleged oral promises of "additional compensation" fails because Plaintiffs are unable to establish reasonable reliance on Mr. Conn's alleged oral promises.[6] Plaintiffs rely on *Baptista v. Abbey Healthcare Group, Inc.,* 1996 WL 33340740, No. 95-10125-RGS (D. Mass. April 10, 1996) (Stearns, J.), in support of their

---

[5] Plaintiffs claim that they were terminated not for "good cause" or in "bad faith." As Plaintiffs do not raise a claim under *Fortune* the issue of whether or not they were terminated without good cause or in bad faith is irrelevant to this matter. Even if the reason for Plaintiffs' termination from employment were relevant, the record clearly demonstrates that they were terminated for good cause. Remarkably, Plaintiffs contradict Mr. Scalli's deposition testimony that in February 2003, at the time of Ms. Scalli's termination from employment, Ms. Scalli was in fact selling a property she owned at 208 Maverick Street to Mr. Barbosa. Plaintiffs also attempt to evade the fact that the day after his employment was suspended, Mr. Scalli told Ms. Hicks that he did not own a property at 208 Maverick Street and failed to disclose the fact that his wife owned the property and was selling it to Mr. Barbosa. *See* SUMF at ¶¶ 41, 44. Plaintiffs further fail to address the fact that Citizens' Code of Ethics provides that employees must avoid any transactions which give even the *appearance* of creating a conflict of interest. Accordingly, as there is no dispute based on Mr. Scalli's sworn testimony that Ms. Scalli was selling a property she owned to Mr. Barbosa at the time of her termination, she was terminated with good cause as a result of her violation of Citizens Code of Ethics. Mr. Scalli's employment was terminated, in part, because of his failure to cooperate with the ongoing investigation. Mr. Scalli's failure to disclose the fact that Ms. Scalli owned a property she was selling to Mr. Barbosa would certainly be evidence of his failure to cooperate with the Company's investigation. *See* SUMF at 42-43, 46.

[6] Plaintiffs' misrepresentation claim is limited to the allegations of misrepresentations contained in the Complaint. *See* Fed.R.Civ.P. 9(b). Plaintiffs may not reach beyond allegations raised in the Complaint at this late date. Mr. Scalli does not raise a misrepresentation claim. The misrepresentations alleged in the Complaint are limited to allegations by Ms. Scalli that she was promised a draw of $1,000 for every $1 million in loans she originated and that Ms. Scalli was promised "10 bonus points" on all her sales. Notably, Plaintiffs do not contest Defendant's position that it made no intentional misrepresentations concerning "an all expense trip to Aruba" for Ms. Scalli or "additional support staff for Ms. Scalli. *See* Compl. at ¶¶ 18-21.

4

position that reliance on Mr. Conn's alleged oral promises was reasonable even in the face of their fully integrated signed Contracts. In *Baptista,* a case reviewed on a motion to dismiss, the plaintiffs were former executives who alleged that the Chairman of the Board promised that they would be entitled to exercise certain stock options if they were terminated by the employer. The plaintiffs in *Baptista,* unlike the Scallis, did not rely merely on oral representations. Rather, they were sent an Employee Stock Options Summary summarizing the accelerated vesting schedule and the Chairman of the Board directed that certain paperwork be prepared to reflect the modified vesting schedule. The plaintiffs' complaint also alleged that other documents were prepared. *See id.* at *3. Plaintiffs submitted documents which, on their face, were a summary of the accelerated vesting promised by the Chairman of the Board to the plaintiffs. *See id.* at *4. The Court found the existence of these documents supported the inference that there may be other documents (supportive of the fact that this vesting schedule was promised to plaintiffs) which plaintiffs had a right to seek through discovery. *See id.* at *5. The Court, therefore, denied defendants' motion to dismiss plaintiffs' misrepresentation claim because, "at this stage in the proceedings," before discovery, the Court could not find that the plaintiffs acted unreasonably in relying on the Chairman of the Board's representations. *See id.* Here, the parties have completed discovery which spanned approximately one year and included five separate requests for production of documents from Plaintiffs to Defendant and depositions of ten individuals. During this lengthy and intensive process, *Plaintiffs did not discover or produce one piece of written documentation supportive of their assertion that Mr. Conn made any oral or written promise to them for additional compensation outside the terms of their fully integrated, negotiated and signed Contracts.*

Plaintiffs reliance on *Weiner v. Fleischman*, 54 Cal.3d 476 (1991), a California case which the *Baptista* Court cited, is equally misplaced. In *Weiner,* the California court affirmed the judgment of the Court of Appeals, holding that the trial court erred by instructing the jury that plaintiff had to establish the existence and scope of an oral joint venture by clear and convincing evidence, rather than by preponderance of the evidence. *See id.* at 488. Even if a case applying California law were somehow relevant to this matter, *Weiner* merely establishes the proper instruction for the jury on burden of proof. Here, Plaintiffs' failure to present any evidence of Mr. Conn's alleged oral statements, which directly contradict their signed Contracts, clearly would lead to their inability to establish these promises by clear and convincing evidence or preponderance of the evidence.

Plaintiffs rely on *Cambridgeport Savings Bank v. Boersner,* 413 Mass. 432 (1992), a case which supports Defendant's position that Plaintiffs' claims for unpaid compensation are barred by the parol-evidence rule. In *Cambridgeport Savings Bank,* the court held that the evidence did *not* permit an inference that the parties (a bank and a guarantor of a mortgage note) had reached an oral agreement to modify a written contract to provide for interest funding by the bank. The oral agreement did not modify the written contract even though plaintiff presented evidence of modification of the agreement including "written communications setting forth the details of the new agreement." *Id.* at 439. The court also explained that "[s]ignificantly, the [guarantors] did not assert that a subsequent agreement had been negotiated; instead, they testified that that bank's obligation to fund the monthly interest payments was a term of the original agreement." *Id.* at 440. "Their argument appears to reflect a continuing erroneous belief that the same evidence of a contemporaneous agreement that was excluded under the parol evidence rule could prove their theory of subsequent oral modification." *Id.* Plaintiffs here, just as the plaintiffs in

6

*Cambridgeport Savings Bank,* now claim in the Opposition that the agreement to pay them additional sums was part of an original written agreement with Defendant despite the fact that their integrated signed Contracts make no reference to these additional monies they claim they are owed. In fact, in their affidavits, Plaintiffs both assert that "[t]he first versions of the offer letter reflected the promise made by Barden Conn, the final versions were then changed by Mr. Conn." E. Scalli Aff. at ¶4; R. Scalli Aff. at t 4. Accordingly, Plaintiffs maintain that their initial negotiations with CMC included representations concerning compensation beyond the compensation agreed to in their final integrated Contracts. Such a claim is clearly barred by the parol-evidence rule.

Finally, Plaintiffs claim that they had no duty to investigate the veracity of the alleged oral statements made by Mr. Conn, which directly conflicted with their signed Contracts. Such a claim is not supported by relevant case law. As the First Circuit explained in affirming summary judgment on a plaintiff's misrepresentation claim, "[w]hen a person acts in a way contrary to his own acknowledged understanding of the facts, his acts must be deemed unreasonable as a matter of law" and "[t]he conflicting content of ... oral statement with ... written statement ... should have placed petitioner on notice that he should not rely on either statement. Confronted by such conflict a reasonable person investigates matters further; he receives assurances or clarification before relying." *See Trifirov. New YorkLife Ins. Co.,* 845 F.2d 30, 33-34 (1st Cir. 1988); *see also Sands v. RidefilmCorp.,* 212 F.3d 657, 665 (1st Cir. 2000) (plaintiff's reliance on defendants' oral statements, which conflict with written representations, was not reasonable as a matter of law). Here, Plaintiffs' signed and fully integrated Contracts (in Mr. Scalli's case two

separate Contracts), describe the terms of their compensation.[7] Plaintiffs' reliance on alleged oral representations made by Mr. Conn is counterintuitive. Plaintiffs, by all accounts sophisticated business people, claim they were promised additional wages and compensation during the course of their two years of employment. They assert that they were never paid any of these promised wages but instead of complaining to anyone (aside from the individual who allegedly made these promises) they continued working and in fact, did not even mention this issue when, as they assert, they were "wrongfully discharged." SUMF at ¶ 47.

Moreover, Plaintiffs' reliance on *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928 (1st Cir. 1985) and *Roadmaster Industries, Inc. v. Columbia Manufacturing Co.,* 893 F.Supp. 1162 (D. Mass. 1995), is wholly unfounded. Neither *Bond Leather* nor *Roadmaster Industries* involved a circumstance where a plaintiff asserted an oral misrepresentation that directly conflicted with a written term of a contract. Accordingly, the defendants in *Bond Leather* and *Roadmaster Industries* did not assert that the plaintiffs' reliance on their oral misrepresentations was unreasonable because of a conflict between the oral misrepresentation and the written contract. Additionally, there was no evidence in either *Bond Leather* or *Roadmaster Industries*

---

[7] Plaintiffs appear to claim that Mr. Conn made "changes" to the Contracts and such "changes" make their reliance on his alleged oral promises for additional compensation reasonable. Plaintiffs fail to present any evidence that substantive terms of the Contracts were "changed" by Mr. Conn. Neither Ms. Scalli's nor Mr. Scalli's job titles nor their positions changed during the course of their employment. Mr. Scalli testified that he concentrated his work in marketing. Marketing is a fundamental aspect of any successful loan originators position. Indeed, the very purpose of the loan origination position, a sales job, is to market the available loan products. Additionally, there is absolutely no evidence that Mr. Conn ever changed commission reports so that loans Mr. Scalli originated were credited to Ms. Scalli. According to Mr. Scalli's own testimony, Mr. Conn requested that Mr. Scalli enter all loans he originated under Ms. Scalli's production number and Mr. Scalli agreed to Mr. Conn's request. SUMF at ¶ 23. Moreover, the fact that at a certain point Mr. Scalli was paid a draw from Ms. Scalli's commissions of $1,000 per month (to cover health and dental insurance for his family, *including Ms. Scalli*), does not conflict with any terms of the Contracts. In fact, as there is no dispute Ms. Scalli was paid commissions for loans originated by Mr. Scalli, this $1,000 payment to Mr. Scalli was arguably not even a deduction of Ms. Scalli's commissions. Even if these alleged actions were "changes" to their Contracts, such "changes" are easily distinguishable as compared to Plaintiffs assertions concerning additional compensation that Mr. Conn allegedly promised.

that the contracts at issue contained integration clauses. In *Roadmaster Industries,* an environmental case involving non-disclosure as the form of misrepresentation, the Court held that there were "no facts in the record that would even permit an inference that plaintiff's reliance on the warranties in the agreement was unreasonable." *Id.* at 1179. Here, on the other hand, there was ample reason for Plaintiffs to inquire about Mr. Conn's alleged promises for additional compensation because they were never paid these sums during their two years of employment and their signed, fully integrated Contracts make absolutely no reference to these additional sums. As a result, Plaintiffs' misrepresentation claim should be dismissed.

### IV.    Plaintiffs Wage Act Claim Fails Because They Cannot Demonstrate that They Are Owed Any Wages

In support of their Wage Act claim, Plaintiffs rely on the same cases cited above in support of their misrepresentation claim. Plaintiffs do not dispute that they were paid all amounts due under the terms of their signed Contracts. Plaintiffs' Wage Act claim, is therefore, essentially the same claim raised above for misrepresentation; a claim that Defendant breached verbal promises allegedly made by Mr. Conn. Plaintiffs fail to address the fact that their uncorroborated testimony does not present a genuine issue of material fact. *See Ricci v. Alternative Energy, Inc.,* 211 F.3d 157, 161 (1st Cir. 2000) ("It is the role of the judge on summary judgment to determine whether a particular inference is reasonable ... Evidence presented on summary judgment may be 'inherently incredible' and so disregarded") (citation omitted); *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir. 1997) (non-moving party may not rest merely on improbable inferences or unsupported speculation) (citations omitted). Plaintiffs' implausible testimony is not sufficient to overcome their burden of proving sufficient facts showing that there is a genuine issue for trial.

Moreover, Plaintiffs' reliance on *Massachusetts v. Morash,* 490 U.S. 107 (1989), in support of their position that the Wage Act applies to corporate executives is unfounded. In *Morash,* the Court was not interpreting the Wage Act. Rather, the *Morash* Court was determining whether the statute, with regard to unpaid vacation time, was pre-empted by ERISA. *See id.* at 110-112.

### V.    Plaintiffs* Claim for Tortious Interference Fails Because There is No Evidence That Defendant Interfered with Their Subsequent Employment with Improper Means or Motive

Plaintiffs admit that they found employment as loan originators shortly after the termination of their employment from CMC. Plaintiffs do not contest the fact that a call from a CMC representative to GMAC (to inquire about whether or not Mr. Scalli was employed by GMAC) is insufficient, as a matter of law, to form the basis of a tortious interference claim. Rather, Plaintiffs appear to rely on an unsupported allegation that Defendant somehow impeded their ability to originate loans after they left CMC.[8] Plaintiffs rely on affidavits of brokers (Philip Consolo, Stephen Amaral and Victoria Laws) to support their spurious contention. As is described in more detail in the motion to strike these affidavits, Plaintiffs' failure to comply with the Federal Rules of Civil Procedure preclude the Court from considering these affidavits in deciding Defendant's Motion for Summary Judgment. Even if the Court were to consider these affidavits, none of these affidavits identify any individuals employed by CMC that made these

---

[8] Notably, Ms. Scalli earned more than $210,000 from GMAC in 2003 (after her termination from CMC in February 2003) and over $200,000 from GMAC in 2004. Therefore, Ms. Scalli's assertion that she lost business in 2003 as a result of her termination from employment with CMC does not withstand scrutiny given the fact that her income from GMAC was approximately the same in 2003 and 2004. SUMF at ¶ 56.

alleged statements about Plaintiffs.[9] Certainly, there is no basis for holding Defendant liable for statements made by individuals who are not even employed by CMC. Finally, even if these statements were made by a CMC employee, Plaintiffs fail to present any evidence to demonstrate that such unknown CMC employee was acting within the scope of his or her employment. *See* Rule 56(e) (requiring that affidavits present admissible evidence; only relevant evidence is admissible). Therefore, Defendant may not be held liable for any purported tortious interference with Plaintiffs' contracts.

### VI. There is No Evidence That Ms. Noel was Acting Within the Scope of Her Employment

Plaintiffs' defamation claim is solely based on an alleged statement by the Company's former employee Victoria Noel. Compl. at ¶ 23. To the extent Plaintiffs attempt to expand the scope of their defamation claim, such a claim is improper based on assurances that Plaintiffs provided to Defendant during the discovery process. *See* Aff. of Jeffrey Siegel, Esq. at ¶¶ 4-5 (attaching April 9, 2004 letter to Plaintiffs' counsel confirming in relevant part: there are no statements other than the allegation that "on or about February 6, 2003 through June 2003 Victoria Noel of Citizens Bank during her communication with Javier Pico and Danielle Felice stated that [the Plaintiffs] had been 'indicted for bank fraud.'"). Moreover, Plaintiffs' reliance on the affidavits of Philip Consolo, Stephen Amaral and Victoria Laws in support of their defamation claim is improper as these affidavits must be stricken as is described in more detail in Defendant's motion to strike.

---

[9] Additionally, the affidavits Plaintiffs rely on in support of their intentional interference claim only relate to rumors concerning *Ms. Scalli* and therefore, cannot form the basis of a claim by *Mr. Scalli* for tortious interference. *See* Rule 56(e).

Plaintiffs fail to present any evidence that Ms. Noel, who allegedly made the defamatory statement, was acting within the scope of her employment. *See Kelly v. Middlesex Corp.,* 35 Mass. App. Ct. 30, 31-32 (1993) ("In order to recover from [employer] on the basis of vicarious liability ... *it was the plaintiff's burden*" to show that the employee was acting within the scope of his employment when he committed the tortious act) (emphasis added). Plaintiffs cannot produce any evidence to demonstrate that Ms. Noel made this alleged statement within the scope of her employment. Plaintiffs' assertion that "*[i]t is submitted that* Ms. Noel made this statement ... in part to serve the company" is completely unsupported by the factual record and insufficient to overcome Defendant's summary judgment motion.[10] Opp. at 21 (emphasis added); *see Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir. 1990) (to defeat summary judgment, the plaintiff must demonstrate that there is sufficient evidence favoring the plaintiff for a jury to return a verdict for the plaintiff. If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted) (citations omitted). Moreover, Plaintiffs' fallacious statement that CMC engaged in "a concerted effort ... to prevent the Scallis from continuing to derive business from their long established relationships with local realtors" is completely unsupported by any testimony or documents in the record before the Court.[11] Finally, Mr. Pico's affidavit is evidence of the fact that Plaintiffs cannot prove any harm as a result of Ms. Noel's alleged

---

[10] Plaintiffs cannot present any evidence that Ms. Noel made this statement at the direction or request of anyone from the Company or that she was motivated to serve the Company. *See, e.g., Alba v. Interactive Data Corp.,* 1995 WL 1146839, No, 9203570A (Mass. Super. Nov. 17, 1995) (Smith, J.) (granting summary judgment to defendant on defamation count in part because action of the employee were not done at the request of the employer); *Schlichte v. Granite Sav. Bank,* 40 Mass. App. Ct. 179, 182 (1996) (affirming summary judgment for employer where the employee's tortious behavior was "neither part of her job nor intended in any respect to benefit" her employer).

[11] Plaintiffs submit an affidavit from Erin Green, replete with hearsay, in an apparent effort to draw into question the veracity of Danielle Felice's affidavit. Defendant has filed a motion to strike Ms. Green's affidavit as it contains inadmissible hearsay. Moreover, Ms. Felice, the witness named by Plaintiffs as allegedly hearing Ms. Noel's statement, is the proper party to testify about what she was and was not told by Ms. Noel.

statement. Damages for a defamation claim include: lost wages, mental suffering, and harm to reputation. *See Shafir v. Steele,* 431 Mass. 365, 373 (2000). Plaintiffs cannot possibly present any evidence of lost wages as a result of Ms. Noel's alleged statement to Mr. Pico. Plaintiffs were not employed by Mr. Pico. During the discovery process, Plaintiffs waived any claim for emotional distress damages. Finally, Mr. Pico's affidavit does not dispute Ms. Scalli's testimony that Mr. Pico performs real estate closings for Ms. Scalli and Mr. Scalli's testimony that Mr. Pico is currently representing him in a legal dispute. *See* SUMF at ¶ 51, Pico Aff. at ¶ 8. As Mr. Pico continues to represent and work with Mr. Scalli and Ms. Scalli clearly Ms. Noel's alleged statement did not harm Plaintiffs' reputation. Therefore, Plaintiffs' defamation claim fails as they cannot create liability against Defendant for Ms. Noel's alleged statement.

## CONCLUSION

For all of the foregoing reasons and for all of the reasons set forth in Defendant's initial brief, Defendant asks that the Court GRANT its Motion for Summary Judgment on all counts of Plaintiffs' Complaint and dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.
By its attorneys,

/s/Bradford J. Smith
Bradford J. Smith (BBO No. 550325)
Anne M. Gaeta (BBO No. 643299)
Goodwin Procter LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

Dated: August 11, 2005

LIBB/1362542.2