UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**ELEANOR SCALLI, and,**
**ROBERT SCALLI**
  **Plaintiffs,**
v.             **CIVIL ACTION NO.: 03CV-12413DPW**

**CITIZENS FINANCIAL GROUP, INC.**
  **Defendant.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFFS' RESPONSE TO REPLY BRIEF**
**IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

  Plaintiffs, Eleanor and Robert Scalli, respectfully submit this response to reply memorandum in further support of the Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. The Defendant has failed to meet its burden to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

**I.**  **Defendant's argument that the Wage Act provides the exclusive remedy for the Plaintiffs' claims is plainly wrong**

  The Defendant contends that it is entitled to summary judgment on Count I of the Plaintiffs' Complaint, because the remedy the Plaintiffs' seek through the common law cause of action is the same as their statutory claim under Count II. This argument is plainly wrong. In Count I of the Complaint, the Plaintiffs allege that they were fired in retaliation for complaints to Senior Vice President, Barden Conn, about violations of state and federal tax laws and social security benefits; violation of employee benefits laws as well as their additional compensation. There is an undisputed public interest in compliance with tax laws[1] and social security benefits[2] as well as employee benefits

---

[1] " The Congress shall have power to levy and collect taxes on incomes…" XVI Amendment to the Constitution.
[2] The Social Security Act of 1935 was enacted to provide economic security to workers financed by a tax on employees and their employers.

1

programs.[3]  There can be no doubt that the Plaintiffs' claim of retaliation is legally separate and distinct from their claim alleging wrongful denial of compensation under M.G.L. c. 149 § 148.

Compliance with tax, social security and employee benefits laws are clearly defined and well established public policies that were threatened by the Defendant's failure to take proper deductions from Mr. Scalli's paycheck and taking improper deductions from Mrs. Scalli's paycheck.  *Glaz v. Ralston Purina Co.*, 24 Mass. App. Ct. 386 (1987).  Here, the termination was in retaliation for performing important and socially desirable acts, exercise of statutory rights and refusing to commit illegal acts by fulfilling their duties to assure the bank's compliance with the laws involving taxes, social security and employee benefits.  See Plaintiff's Supplemental Appendix; Exhibit 1 (E. Scalli Dep. Vol. II at 83-86); SDMF at ¶ 13.

The Defendant asserts that Mr. Scalli's right to contribute to the employee benefits plan is preempted by ERISA.  However, the Plaintiffs' have independent duties to assure the bank's compliance with the law which are important and socially desirable acts.  Additionally, these matters are not strictly internal to the bank.  The Defendant further asserts that even if the Plaintiffs' complained about the bank's compliance with tax and social security laws, the Wage Act provides remedies for those claims.  Yet, the Defendant cites no authority for its contention.[4]  See Defendant's Reply at 2.  Indeed, unless a remedy is recognized there are no other ways to vindicate the important public policy of compliance with tax, social security and employee benefits laws.

---

[3] The goal of the Employee Retirement Income Security Act of 1974 is to protect the interests of participants and their beneficiaries in employment benefit plans.
[4] M.G.L. c. 149, § 148 simply requires employers to pay employees on a timely basis.  It does not address deductions for taxes, social security and employment benefits.

There is an undisputed public interest in compliance with tax, social security and employee benefits laws. Contrary to the Defendant's contention, the Plaintiffs have alleged a basis for their public policy claim and there is a genuine dispute of material fact relative to the motive of the Defendant to discharge the Plaintiffs.

There being issues of material fact genuinely in dispute on Count I, the Defendant's motion for summary judgment on this claim should be denied.

## II.  The Defendant breached the covenant of good faith and fair dealing by avoiding the payment of compensation that was earned or almost earned

The contention by the Defendant that the Plaintiffs do not claim that the Defendant terminated their employment to avoid paying them compensation they had already earned or were "on the brink" of earning is indicative of many of the misstatements contained in its Statement of Undisputed Material Facts. See Defendant's Reply at 3. Specifically, Mr. Scalli testified during his deposition that he had advised Mr. Conn that he intended to speak with Mr. Adamo regarding the monies he was owed. Mr. Scalli intended to speak with Mr. Adamo at a company event and he did not speak to him because prior to the event he was suspended and Mrs. Scalli was terminated. See Plaintiffs' Supplement Appendix Exhibit 2 (R. Scalli Dep. at 84-86). Mrs. Scalli repeatedly asked Mr. Conn to address problems with illegal and unauthorized monies removed from her earned commissions. Namely, problems with employee benefit contributions, monies deducted from Mrs. Scalli's compensation and paid to Robert Scalli, monies deducted from Mrs. Scalli's commissions and paid to Mr. Conn, and tax irregularities brought to Mrs. Scalli's attention by her accountants. See Plaintiffs' Supplemental Appendix Exhibit 1 (E. Scalli Dep. Vol. II at 83-86). Mrs. Scalli testified that all of the aforementioned concerns, including but not limited to money owed to her

3

due to unauthorized deductions from her commissions, was one of the last conversations she had with Mr. Conn before her termination. *Id.* at 84.

More significantly, the Defendant's assertions that Citizens Mortgage Corporation (hereinafter, "CMC") did not realize a "financial windfall" as a result of the Plaintiffs termination from employment is belied by all of the evidence presented by the Plaintiffs. (See Defendant's Reply p. 3, n. 4). Mr. Scalli testified that he, at all relevant times, subsequent to approximately one week from the date of his hire, acted in the capacity of marketing and was promised a forgivable draw and salary. SDMF at ¶ 13. Mr. Conn confirmed that Mr. Scalli worked in a marketing capacity while employed at CMC and, to the best of his knowledge, was not paid for this "unprecedented role." SDMF at ¶¶ 15-21.

Mrs. Scalli had monies, without her authority, removed from commissions she earned to pay said monies to Mr. Scalli and Mr. Conn. See Plaintiffs' Supplemental Appendix Exhibit 1 (E. Scalli Dep. Vol. II at 83-86). Mrs. Scalli also had loans that were contained in her laptop confiscated at the time of her termination. CMC failed to provide her with a printout of loans contained in her laptop so that she could verify whether loans CMC claims were closed up to February 4, 2003 were properly paid. See Plaintiffs' Supplemental Appendix; Exhibit 1 (E. Scalli Dep. Vol. II at 63-66). In fact, the Defendant provided Mrs. Scalli with a printout of loans closed up to and including December 2002 during her deposition. *Id.* at 66. Moreover, Mrs. Scalli was promised a $30,000.00 advance and .70 bonus points on loans closed over 3 million dollars per month as well as a $1,000.00 bonus for every $1 million in loans closed per calendar year. SDMF ¶¶ 6-8. Mrs. Scalli further testified that her claims are for monies due at or

around the time of her termination[5]. *Id.* at 66. Mrs. Scalli testified that Mr. Conn, along with many other material modifications to the contract, confirmed to her that she would be paid for any loans that closed in her pipeline within 30 days after the date of termination. *Id.* at 63. Therefore, the Plaintiffs have both testified and affirmatively claimed that CMC did realize a significant "financial windfall." Notably, the Defendant provides no support for the contention that Ms. Hicks and Ms. Cornish were unaware of the compensation due to the Plaintiffs. See Defendant's Reply at 3-4. Relative to Mr. Scalli, CMC closed millions of dollars in loans as a result of the diligent marketing efforts of Mr. Scalli while employed in an unprecedented position, which entitled him, according to Mr. Conn, to no compensation for his marketing efforts. SDMF at ¶¶ 24-25.[6]

There being issues of material fact genuinely in dispute on Count II, the Defendant's Motion for Summary Judgment on this claim should be denied.

**III.    Defendant's argument that the verbal promises made to Mr. and Mrs. Scalli by Senior Vice President, Barden Conn, are unsupported, is plainly wrong**

The Defendant contends that the verbal promises made to Mr. and Mrs. Scalli are unsupported. This assertion is plainly wrong. Mr. Scalli was promised a $50,000.00 forgivable draw and a $50,000.00 salary in year two of his employment for his marketing position. He was further told that the forgivable draw was different from commissions he would receive as a loan officer. Mr. Conn promised Mrs. Scalli a $30,000.00 advance. When she received an erroneous payment of $15,000.00, Mr. Conn promised that he

---

[5] Contrary to the Defendant's assertion, the Plaintiffs' raised a *Fortune* claim as well as genuine issues of material fact. See Opp. at 14.
[6] Aside from bald assertions by Ms. Hicks that Mrs. Scalli received any and all commissions up to and including February 4, 2003, the Defendant failed to cite any specific evidence documentary or otherwise, to refute Mrs. Scalli's claims that she was owed monies for loans in her pipeline that closed before and after

would "fix it." Mr. Conn further promised Mrs. Scalli .70 basis points on loans closed over 3 million per month as well as a $1,000.00 bonus for every $1 million or loans closed per calendar year. SDMF at ¶¶ 3-8[7].

The initial offer to Mrs. Scalli changed several times ultimately reflecting information that was inconsistent with the promises made by Mr. Conn. Even Ms. Tara Tribelli-Gallone, a CMC Recruiter, testified that there had been a delay in receiving the Scalli documents/contracts but that she wasn't aware whether the delay was attributing to changes being made by Mr. Conn. Mr. Scalli also received and may have signed other written documents in addition to the offer letter that in its final version reflected compensation inconsistent with the promises made by Mr. Conn. Mrs. Scalli disputed that she was paid by CMC in a manner consistent with her contract. SDMF at ¶¶ 1-9.

Here, in contrast to the Defendant's contention, the Plaintiffs dispute that the contracts are integrated. See Defendant's Reply at 7. Inasmuch as there is a genuine factual issue as to integration the parol evidence rule does not apply. Moreover, the parol evidence rule does not bar extrinsic evidence when fraud or misrepresentation is alleged. *Polaroid Corp. v. The Travelers Indemnity Co.*, 414 Mass. 747, 756 (1993).

Further, Mrs. Scalli was paid commissions for loans originated by another loan officer, namely, Robert Scalli; Mrs. Scalli had unauthorized monies deducted from her commission to pay another loan officers salary, Robert Scalli; Mrs. Scalli had unauthorized monies deducted from her commissions to cover benefits for another loan officer, Robert Scalli; Mrs. Scalli had unauthorized monies deducted from her

---

her termination. Therefore, this Court should note that a material fact remains in dispute as to whether Mrs. Scalli was paid all the monies due her after her termination.

[7] Contrary to the Defendant's assertion, Mr. Scalli documents raise a misrepresentation claim. See Reply at 4; n. 6. The allegations in the Complaint were stated with sufficient particularity adequately warning the Defendant of the circumstances giving rise to the claim of misrepresentation.

commissions that were paid to Mr. Conn; all of the changes instituted by CMC through Mr. Conn were entirely inconsistent with Mrs. Scalli's contract.  Mr. Scalli, approximately one week subsequent to the commencement of his employment, was told by Mr. Conn that his new position was marketing; Mr. Conn promised Mr. Scalli a forgivable draw for the first year of his employment of $50,000.00 and a $50,000.00 salary when his contract renewed the following year; Mr. Conn instructed Mr. Scalli to originate a very small percentage of loans but to focus on marketing; Mr. Conn informed Mr. Scalli that any loans he originated would be submitted under Mrs. Scalli's name/number; Mr. Conn informed Mr. Scalli that his benefits and 401K would be predicated on his $50,000.00 salary; all of the changes referenced above and promises made by Mr. Conn on behalf of CMC were entirely inconsistent with Mr. Scalli's contract.  SDMF at ¶¶ 11-15.  Therefore the Plaintiffs have provided ample support for the verbal promises of Mr. Conn.

Of note is the fact that Human Resources Director, Joyce Hicks, claimed that the Scallis orally modified their contracts through a request to their manager, Mr. Conn, absent any writing or document.  Ms. Hicks admitted that an issue with Mr. Scalli's benefits arose and he went in the negative, so his benefits were rejected by payroll.  Because there wasn't enough money to cover his benefits, CMC had to set-up a small draw, a draw that was funded by Mrs. Scalli.  SDMF at ¶ 13.

Mr. Conn claimed that Robert Scalli unilaterally chose to give his loans to Mrs. Scalli without any authority or notice to human resources; Mr. Conn also claims that employees had the authority to direct their income generated from commissions to a third party without notice to human resources; Mr. Conn further claimed that no one at CMC needed to authorize these changes to the contract.  Luis Riascos, an assistant to Eleanor

7

Scalli, claimed that all the loans originated by Mrs. Scalli were inputted into the computer under her name and number and all the loans originated by Mr. Scalli were inputted into the system under his name and number. SDMF at ¶¶ 9-14. Mr. Scalli testified that Mr. Conn switched loans he originated under Mrs. Scalli's name and number and that he had no power to switch loans to Mrs. Scalli. SDMF at ¶ 33.

The Defendant's attempt to distinguish cases cited by the Plaintiff through a recitation of facts, unconnected to the principles of law discussed therein, is unpersuasive in light of the multitude of disputed material facts presented by the Plaintiffs that are specifically supported by well settled legal axioms cited *infra*.

On the issue of the parol evidence rule, it is abundantly clear that an oral agreement modifying the terms of a later signed written agreement goes directly to the question whether the written document is an integrated statement of the entire agreement of the parties. See *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 712 & N.7 (1990). In the instant case, a finding that the writing is not an integrated statement of the parties' agreement can open the door for proof of other elements of the agreement. See also, *Antonelli's v. Northgate Construction Corp.*, 362 Mass. 847, 849-851 (1973). Here, the Plaintiffs have consistently argued that they have presented ample evidence to open the door for proof of other elements of the agreement intentionally omitted from the contract by Mr. Conn. SDMF at ¶¶ 11-25.

The Plaintiffs would note that integration is a preliminary question of fact, which may be resolved upon extrinsic evidence, including proof of negotiations and other representations of the parties. See *Ryder v. Williams*, 29 Mass. App. Ct. 146, 149 (1990). In the instant case, Mr. Conn, Ms. Hicks and the Plaintiffs have confirmed that the documents and contracts were clearly not integrated. As cited more fully, *supra*,

Mr. Conn admitted that all the changes to the contract that occurred as a result of the unprecedented "team concept" did not require a writing, nor an amendment to the contract, and could be unilaterally changed by Mr. Scalli and Mrs. Scalli. SDMF at ¶ 14. Mr. Conn stated that these changes to the specific language to the contract did not need to be authorized by anyone at CMC. *Id.* Mr. Conn further stated he had negotiated the "team concept" but that he did not provide the terms of the "team concept" to Human Resources during the drafting of the contract. SDMF at ¶ 17. In fact, the Plaintiffs both testified that Mr. Conn was the architect of the "team concept" and directly implemented the monetary changes and changes to Mr. Scalli's duties not memorialized in Mr. Scalli's nor Mrs. Scalli's contract. SDMF at ¶¶ 13-16.

More importantly, Ms. Hicks, the Defendant's 30(b)(6) witness claimed that Mr. Conn never informed her of the terms of the "team concept" until immediately prior to the Plaintiffs' terminations, stated she assumed that Mr. Conn had knowledge of the "team concept" and that he approved it. SDMF at ¶ 22[8].

The multitude of disputed facts in this matter, at times even among the Defendant's own witnesses, make it plain that this Court may review all of the extrinsic evidence and negotiations for purposes of determining that integration did not occur, or at the very least, reasonable inferences can be drawn from the evidence to place the integration issue in dispute.

As for the Defendant's erroneous contentions regarding subsequent oral modifications, it is a settled "principle that the mode of performance required by a written

---

[8] Whether Ms. Hicks was informed from the outset of the Plaintiffs' employment about the "team concept" and decided to omit the changes to the written contract intentionally is a disputed question of material fact. Mr. Conn claimed both that he informed Ms. Hicks or Human Resources of the "team concept" at the time the contracts were drafted and that he did not inform Ms. Hicks or Human Resources at the time the contracts were drafted. SDMF at ¶¶ 46-47.

contract may be varied by a subsequent oral agreement based upon valued consideration." See *Siegel v. Knott*, 316 Mass. 526, 528 (1944). In the instant case, Mr. Scalli's diligent efforts in the area of marketing, according to Mr. Conn, for no compensation, is ample evidence of sufficient consideration. *Id.*

Moreover, the case law instructs this court to carefully consider the conduct of the parties when considering the Plaintiffs' claims that a later agreement existed. *Flynn v. Wallace* at 715. Clear and unambiguous terms of the original contract, specifically requiring proof of prior written consent to any modification does not nullify the subsequent oral agreement if there is valid consideration. *Siegel v. Knott* at 528. As stated *supra*, Mr. Scalli provided ample consideration for the subsequent oral modification of his contract. All inferences drawn from the Plaintiffs' Statement of Disputed Material Facts makes clear that the issue of valued consideration has been confirmed by Mr. Conn and Ms. Hicks. SDMF at ¶¶ 11-25.

In the case of Mr. and Mrs. Scalli, a mutual agreement between Mr. Conn and the Plaintiffs can be inferred from the conduct of the parties from all the attendant circumstances listed in the Plaintiffs' Statement of Disputed Facts. Specifically, approximately one week after Mr. Scalli commenced his employment, Mr. Conn informed him that he would have a new position in marketing and receive in year one a forgivable draw and in year two a salary. Mr. Conn specifically stated that a written document or changes to the Scalli contracts regarding the "team concept" and Mr. Scalli's new marketing position were not necessary and irrelevant, even though said changes were unprecedented. SDMF at ¶¶ 15-21[9].

---

[9] The Defendant has waived any rights it had to contest the "team concept" and/or oral modification by failing to address or respond to the same in any of the Defendant's submissions presently before this Court.

10

Based on all the negotiations and attendant circumstances and further confirmed, by identified actions taken by Mr. Conn throughout the Plaintiffs' employment as it relates to subsequent oral modifications of the contracts, this Court should find that the Plaintiffs have raised many reasonable inferences that a subsequent oral modification did occur.

There being issues of material fact genuinely in dispute in Count III, the Defendant's Motion for Summary Judgment on this claim should be denied.

**IV.    Plaintiff's have presented sufficient disputed facts on the issue of wages, benefits or commissions owed pursuant to the Wage Act**

First, Plaintiffs dispute that the Defendant complied with the terms contained in the signed contracts. Second, the Plaintiffs have repeatedly alleged that the terms, duties and compensation contained within the signed contracts were never integrated and/or immediately modified by Mr. Conn approximately one week after the commencement of Mrs. Scalli's employment. SDMF at ¶ 13. Third, Ms. Hicks testified that she did not know how much money Mrs. Scalli lost as a result of her termination. See Plaintiffs' Supplemental Appendix Exhibit 3 (J. Hicks Dep. Vol. II at 186).

The Defendant's reliance on *Ricci v. Alternative Energy, Inc.*, 211 F.3d 157, 161 (1st Cir. 2000) is misplaced based on the multitude of disputed facts presented herein. The Plaintiffs have not relied on "uncorroborated testimony" with respect to modification and promises made by Mr. Conn. See Defendant's Reply at 3. Ms. Hicks, the 30(b)(6) deponent, testified that Mr. Scalli and Mrs. Scalli could modify their incentive plans and/or positional duties through a unilateral request to their manager, absent any writing. SDMF at ¶ 13. Ms. Hicks also testified that she assumed Mr. Conn would have known and would have approved any modification as manager. SDMF at ¶ 22. Also, Mr. Conn

11

confirmed the "team concept" which was unprecedented and purposely omitted from the contracts upon which the Defendant seeks to rely. SDMF at ¶¶ 17-25. Therefore, the Defendant's suggestion that the Plaintiffs rely on improbable inferences is belied by the multitude of sufficient facts contained in the Plaintiffs' Statement of Disputed Facts, showing that there is a genuine issue for trial[10].

There being issues of material fact genuinely in dispute on Count IV, the Defendant's Motion for Summary Judgment on this claim should be denied.

**V.    Plaintiffs' have presented material facts that sufficiently support their claim that the Defendant interfered with their advantageous business and contractual relations**

The Plaintiffs have presented evidence through their own testimony regarding a pattern of interference both by Victoria Noel, Diane Franco and other CMC employees that were attempting to discredit Mr. Scalli and Mrs. Scalli in an effort to capture their lucrative origination business for themselves and CMC. See Plaintiff's Supplemental Appendix Exhibit 4 (R. Scalli Dep. Vol. II at 46-50). Mr. Scalli testified that brokers were contacted by CMC employees and that he lost business, and his phone stopped ringing as a result of the interference by CMC. *Id.* at 50. Mr. Scalli's testimony was corroborated by Philip Consolo, Stephen Amaral and Victoria Laws. As described more fully above in the Plaintiffs' Opposition to Defendant's Motion to Strike the Consolo, Amaral and Laws Affidavits, the Plaintiffs' failure to disclose was harmless because the Defendant did not depose any of the brokers identified by the Plaintiffs during their depositions. Also, although the Defendant audited many of the Scalli loans, it never

---

[10] See *Mass v. Morash*, 490 U.S. 107.

attempted to depose any of the brokers named therein. See Exhibit 4 (J. Hicks Dep. Vol. II at 33.) The testimony of the Plaintiffs and the corroboration by the specific brokers aforementioned is further buttressed by the fact that Mrs. Scalli had a significant loss of business in 2003 which continued into 2004 due to CMC's interference.[11] All the evidence presented by the Plaintiffs raise inferences that CMC loan officers, including but not limited to Victoria Noel, as part of the scope of their employment, were contacting brokers and attorneys in an effort to capture business for themselves and CMC by publishing knowingly false statements about Mr. Scalli and Mrs. Scalli. (The Court must construe all inferences in favor of the non-movant). See *Suarez v. Pueblo Int'l., Inc.*, 229 F.3d 49, 53 (1st Cir. 2000). The Plaintiffs have presented specific evidence, to wit, 2003-2004 earned income, that proves the significant impact negative and false statements had on their ability to originate loans after their respective terminations from CMC. The Plaintiffs have testified that they were informed of knowingly false statements being made to brokers and attorneys by CMC employees, and Javier Pico, Philip Consolo, Stephen Amaral and Victoria Laws have corroborated the interference.

It defies credulity to suggest that the Court may not draw proper inferences that CMC employees were engaged in a concerted effort to capture the loan origination business from brokers and attorneys loyal to the Plaintiffs for many years through improper means while acting within the scope of their employment as loan officers at

---

[11] The Defendant's analysis of Mrs. Scalli's income in 2003 and 2004 is nonsensical. Mrs. Scalli had a significant amount of her broker contacts poisoned by CMC employees and, therefore, the impact from the interference by CMC with local brokers cultivated by Mrs. Scalli over several years continued into 2004. Hence, her income in 2003 and 2004 was significantly less than her income in 2001-2003 with CMC.

CMC. Therefore, the Defendant's claims that the Plaintiffs have failed to present sufficient facts on the issue of intentional interference should be rejected.

There being issues of material fact genuinely in dispute in Count V, the Defendant's Motion for Summary Judgment on this claim should be denied.

**VI.    Ms. Noel's acts occurred within the authorized time performance, and space of her employment and were motivated, in part, to serve CMC**

The facts of the case relied on by the Defendant, specifically *Schlichte v. Granite Save. Bank*, 40 Mass. App. Ct. 179, 182 (1996) are entirely inapposite to facts presented in the Plaintiffs' defamation count. In *Schlichte v. Granite Save. Bank* at 182, the court was reviewing facts involving negligent supervision theories, not defamation, and the Court found that none of the employees' acts were tortious. *Id.* Hence, the Court applied axioms of vicarious liability related to facts involving negligent supervision. Here, Ms. Noel was contacting attorneys and brokers as part of the job she performed as a loan officer to develop new business. Her phone calls to attorneys and brokers to develop business occurs within the authorized time and space limits of her employment. It may be inferred that obtaining new business from attorneys and/or brokers by spreading falsehoods about her competition would benefit Ms. Noel, and the fact that her predominant motivation was to benefit herself, does not prevent her acts from coming within the scope of employment, as long as the act is otherwise within the purview of her authority. See *Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). Ms. Noel has authority to contact lawyers, brokers and others to originate loans. Acting within the scope of that authority she contacted brokers and attorneys on behalf of CMC. Although Ms. Noel may have been motivated by self-interest, namely capturing the lucrative Scalli real estate and legal contacts, an inference can be drawn that her

actions also served CMC by salvaging sources of business that would have essentially transferred to CMC competition.

It is well established that the court must draw all reasonable inference in favor of the non-moving party, and, it may not make credibility determinations or weigh the evidence. See *Reeves v. Sanderson Plumbing Prods, Inc.*, US, 120 S.Ct. 2097, 2110 (2000). Once again, the Defendant's assertion that the Plaintiff has failed to present any evidence upon which an inference can be drawn that CMC employees engaged in a concerted effort to prevent the Scallis from continuing to derive business from local realtors and attorneys is belied by the record. First, the record reflects that Mrs. Scalli earned $210,000.00 in 2003 and $200,000.00 in 2004. This is a significant reduction from what she earned in 2002 before the defamatory statements published by Ms. Noel. Second, Mr. Scalli and Mrs. Scalli testified regarding a specific broker and attorney contacted by Ms. Noel. Third, Mr. Scalli testified that his phone stopped ringing and that he lost business as a result of improper statements made by Ms. Noel and others. Fourth, Philip Consolo, Stephen Amaral and Victoria Laws have confirmed the same.[12]

The Defendant's contention that the Plaintiffs cannot possibly present any evidence or lost wages as a result of Ms. Noel's alleged statement to Mr. Pico is a blatant misstatement of fact and law. The Defendant's reliance on *Shafirv v. Steele*, 431 Mass. 365, 373 (2000) is misplaced. In *Shafirv v. Steele*, 431 Mass 373, the Court was

---

[12] Ms. Felice confirmed information regarding Ms. Noel for purposes of the Plaintiffs' Verified Complaint. Ms. Felice has now provided an Affidavit recanting the information provided to the Plaintiffs. As stated more fully in the Plaintiffs' Opposition to the Defendant's Motion to Strike the Affidavit of Erin Green, the Affidavit of Erin Green is not presented to prove the truth of the matter. Rather, it is presented to show that Ms. Felice's affidavit raises a dispute as to the motivation for her affidavit that the Plaintiffs should be allowed to test at trial.

reviewing the law of libel. Here, the Plaintiffs have alleged defamation against CMC based on the statements made by Victoria Noel. To prevail the Plaintiff must establish that the false statement was published to a third party and either caused economic loss or was the type that is actionable without proof of economic loss. See *Phelan v. Macy Dept. Stores*, 443 Mass. 52 (2004); *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass 64, 66 (2004). The element of publication is satisfied where the defamatory communication is transmitted to even one person. See *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 56 (1966). Most importantly, the imputation of a crime is defamatory per se, requiring absolutely no proof of special damages as mistakenly claimed by the Defendant. See *Lynch v. Lyons*, 303 Mass. 116, 118-119 (1939). Although the Plaintiffs believe they can prove special damages, they are not required to do so. Because the Defendant failed to depose Mr. Pico, it has no basis to claim that the Plaintiffs did not incur an economic loss from the statements published by of Ms. Noel to Mr. Pico. The Plaintiffs repeatedly admitted that their phones stopped ringing. Hence, any business they may have received from brokers or attorneys was affected by the false statements. Mrs. Scalli's statement that Mr. Pico performed closings does not conflict with Mr. Pico's affidavit because said closings were not performed for Mrs. Scalli personally.[13] It is clear from Mr. Pico's affidavit that he was not representing either Mrs. Scalli or Mr. Scalli at the time of the publication of a statement that was defamatory per se. Pico Aff. at ¶¶ 8, 9. Whether Mr. Pico represents Mr. Scalli or Mrs. Scalli presently is entirely irrelevant to the legal analysis cited above. Conclusory statements regarding whether Ms.

---

[13] The Defendant makes much of Mrs. Scalli's statement that Mr. Pico did closings for her; however, the Defendant never inquired whether she meant in her personal capacity or as a loan officer for CMC.

16

Noel's statement harmed the Scallis' reputations are contrary to the analysis cited *supra* for defamation per se.  *Id.* at 118-119.

It is respectfully submitted that the Court in the instant case should conclude that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and statement of undisputed material facts, raise a genuine issue as to material facts on all counts, and, therefore, the Defendant is not entitled to summary judgment as a matter of law.

## CONCLUSION

For all of the foregoing reasons and for all of the reasons set forth in the Plaintiffs' Opposition to Defendant's Motion for Summary Judgment with Supportive Memorandum, the Plaintiffs respectfully request that this Honorable Court deny the Defendant's Motion for Summary Judgment on all counts.

        Respectfully submitted,
        The Plaintiffs,
        Eleanor Scalli and Robert Scalli
        By their attorneys,

        /s/ Mark E. Burke
        _____
        Mark E. Burke – BBO#556166
        Law Office of Mark E. Burke
        111 South Bedford Street, Suite 208
        Burlington, Massachusetts 01803
        (781) 273-3801

        /s/ Nicholas J. Di Mauro
        _____
        Nicholas J. Di Mauro – BBO#564241
        Law Offices of Nicholas J. Di Mauro
        111 South Bedford Street, Suite 208
        Burlington, Massachusetts 01803
        (781) 273-3801